# Exhibit A

STATE OF MINNESOTA                     DISTRICT COURT

COUNTY OF HENNEPIN                   FOURTH JUDICIAL DISTRICT

_____              Court File:

Dorothy K. Ming'ate,
and
Henry M. Ongeri,

                    Plaintiffs,

                                     COMPLAINT

vs.

Bank of America, N.A.,
and
BAC Home Loan Servicing, LP
and
Richard W. Stanek, Hennepin County Sheriff
                         Defendants.

_____

Plaintiffs DOROTHY K. MING'ATE and HENRY M. ONGERI's Complaint against the

Defendants, states and alleges as follows:

I.

PARTIES

1. Plaintiffs are a married couple, husband and wife, residents of Hennepin County in
   the State of Minnesota.

2. Defendant Bank of America N.A. (hereinafter "BoA") is a foreign corporation
   incorporated under the laws of the State of Delaware and doing business in the State
   of Minnesota.

3. Defendant Richard W. Stanek is the Sheriff of Hennepin County, Minnesota who, or at
   whose direction, the Plaintiffs' property was purportedly sold at a foreclosure on
   February 16, 2011.

4. Upon information and belief, Defendant BoA is a successor in interest by merger to Countrywide Home Loans, Inc.

5. Upon information and belief, Plaintiffs state that Defendant BAC Home Loan Servicing, LP is a wholly-owned subsidiary of Defendant BoA, incorporated under the laws of the State of Texas and authorized to do business in the State of Minnesota. It is a servicing company that services the daily maintenance of mortgage loans on behalf of Defendant BoA.

II.

## JURISDICTION

This Honorable Court has jurisdiction over this matter.

III.

## VENUE

Venue is proper because the subject property is located in Hennepin County and the cause of action arose therein pursuant to Chapter 542 of the Minnesota Statutes.

IV.

## FACTS

6. Since October 2000, the Plaintiffs are registered title owners of the real property described as Lot 14, Block 2, West Winnetka Terrace Fifth Addition, Hennepin County and located at 8501 32nd Avenue North in Crystal in Hennepin County in the State of Minnesota 55427 (hereinafter referred to as "the property" or "the home").

7. By a Mortgage and Note dated October 26, 2006, the Plaintiffs refinanced their loan in the amount of $49,000 with Countrywide Home Loans of Minnesota, Inc., a corporation organized and existing under the laws of the State of Minnesota with its place of business at 8431 Joiner Way, Eden Prairie, Minnesota 55344.

8. By another Mortgage and Note dated October 26, 2006, the Plaintiffs refinanced their then existing home loan in the amount of $171,500 with America's Wholesale Lender, a corporation organized and existing under the laws of the State of New York with its place of business at 4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613.

9. By an instrument entitled "Assignment of Mortgage" dated July 28, 2010 and purportedly signed by Steven H. Bruns, Vice-President of Mortgage Electronic Systems, Inc. (hereinafter referred to as "MERS"), as nominees for America's Wholesale Lender, MERS purported to sell, assign and transfer its interest in the mortgage dated October 26, 2006 to Defendant BAC Home Loan Servicing, LP "together with all right (sic) and interest in the note and obligation therein specified and the debt thereby secured." This instrument was recorded with the Office of the Hennepin County Recorder on August 27, 2010. A copy thereof is attached hereto as "Exhibit.1" and is incorporated by reference.

10. Neither a corporate resolution by the requisite authorities at MERS nor a power of attorney directing the said Steven H. Bruns to act on behalf of the corporation accompanied the supposed Assignment of Mortgage.

11. Upon information and belief, Plaintiffs aver that the said Steven H. Bruns, Vice-President of MERS, appears to be the same individual who issued the Notice of Mortgage Foreclosure Sale dated September 13, 2010 on behalf of Peterson, Fram & Bergman, P.A., attorneys for Defendant BAC Home Loans Servicing, LP. A copy of the Notice of Mortgage Foreclosure Sale is attached hereto as "Exhibit. 2" and is incorporated by reference.

12. Due to catastrophic collapse of home values and other problems in the residential real estate market during 2010, Plaintiffs severally contacted the Defendants seeking modification of the loan under various federal foreclosure prevention programs.

13. Defendants, through their authorized representatives, employees or agents, represented to the Plaintiffs that there existed a loan modification program suited to the Plaintiffs' needs as an alternative to foreclosure. Defendants requested huge amounts of duplicative and repetitive information from the Plaintiffs, ostensibly for purposes of evaluating the Plaintiff's eligibility for a variety of loan modification programs.

14. At all times material to this suit and over the course of several months, Plaintiffs promptly and without failure, provided all information sought by the Defendants and on some occasions, more than once as the agents claim not to have some of the information in their file.

15. Despite repeated promises, Defendants' agents, employees or authorized representatives failed to, within a reasonable time or at all, communicate with the Plaintiffs on the status of their applications for loan modification.

16. On various occasions, Defendants assured Plaintiff Dorothy Ming'ate over the telephone that the matter had been "escalated" to a higher level and to wait for a phone call or letter communication. Plaintiffs received neither and they were left wondering whether the Defendants representatives knew what they were doing or were deliberately misleading the Plaintiffs.

17. As the process dragged on, Plaintiffs continued waiting for a decision from Defendants before making further payments, with the expectation that the same

4

would be modified to reflect the realistic value of the subject property under then
prevailing market conditions. As a consequence, Plaintiffs fell further behind on
mortgage payments.

18. On February 24, 2011, Plaintiffs received a letter from Defendant Bank of America
notifying them that the Defendants had denied Plaintiffs' request for modification
under the Making Home Affordable Program (HAMP). The letter outlined steps that
the Plaintiffs needed to follow to avoid foreclosure and save the subject property.
Foreclosure sale was supposedly on hold till March 3, 2011, after which "the hold on
a foreclosure sale will be released and foreclosure proceedings will resume." The
letter further advised the Plaintiffs to, if they so desired, appeal the denial no later
than March 23, 2011. A copy of the letter is attached hereto as "Exhibit.3" and is
incorporated by reference.

19. Because Plaintiffs really wished to keep the property, Plaintiff Dorothy Ming'ate
immediately contacted the Defendants and sought to exercise other available
foreclosure prevention alternatives as instructed in the Defendant's letter. To her
utter surprise, she was told that the matter was no longer handled by the Defendants
and that the property had been foreclosed on back in February 16, 2011.

20. A search at the Hennepin County Property Records section shows that the property
had been sold by Defendant Sheriff Stanek or someone acting under his authority, on
February 16, 2011 at $183,252.29 to Defendant BAC Home Loans under Sale
Record Number 1102196. A copy of the search results is attached hereto as
"Exhibit.4" and is incorporated by reference.

21. Defendants knew or should have known that by February 21, 2011, the date of the
Defendant's letter to Plaintiffs, no legitimate no foreclosure prevention alternatives

were available to the Plaintiffs because the property had already been sold through

foreclosure at the instruction and instigation of the Defendants.

22. Oblivious and anxious, Plaintiff Dorothy Ming'ate contacted the attorneys at

Peterson, Fram & Bergman, P.A. seeking at a minimum, a withholding of further

action pending clarification from the Defendants whereupon the attorney refused to

do so and referred Plaintiff to the Defendants' REO department. The attorney further

indicated that only the underwriter of the account could postpone the sale,

notwithstanding the fact that the sale had already taken place.

23. Desperate and frustrated, Plaintiff Dorothy Ming'ate called the Defendants daily, in

some cases, up to five times a day. On February 25, 2011, she called yet again and

was advised by a Defendants' representative that the account was being handled by

an underwriter named Dorothy Clave in the REO Department. Upon information and

belief, Plaintiffs allege that this was false and misleading information because Ms.

Clave was not the underwriter of the account at the time Plaintiff Dorothy Ming'ate

was promised that she (Ms. Clave) was the only one who could reverse the decision

to foreclose on the property. Moreover, the foreclosure sale had already taken place!

24. Plaintiff Dorothy Ming'ate was further informed that Ms. Clave was going to make a

telephone call to the Plaintiff s within 72 hours to among other things, clarify the

confusion involving the foreclosure process and also to give details on what the

Plaintiffs needed to do to save their home from foreclosure and sale.

25. Upon information and belief, Plaintiff Dorothy Ming'ate was misled into waiting for

such contact and explanation from the Defendants or Ms. Clave. No such contact

was ever made by the Defendants. To this day, the Plaintiffs are at a loss as to why

6

the Defendants proceeded with a foreclosure while at the same time claiming to be exploring foreclosure prevention alternatives.

26. On March 11, 2011, after waiting for ten days for a response, Plaintiff Dorothy Ming'ate again called the Defendants and a supposed account supervisor assured the Plaintiff that the matter had been "escalated" to a higher officer, yet again!

27. Because Defendants through their authorized representatives, agents or employees deliberately misled the Plaintiffs that the process of loan modification was underway while in fact the Defendants had scheduled and conducted a foreclosure sale more than fourteen days prior to that, the Plaintiffs allege that the purported foreclosure was irregular, improper and invalid.

28. Plaintiffs further allege that the foreclosure was procured through deceit, misrepresentation and deliberate conduct on the part of the Defendants and was therefore wrongful. In the interests of justice, the foreclosure should be invalidated and rescinded.

## V.

## WRONGFUL FORECLOSURE

29. Plaintiffs have requested the Defendants to provide documents showing that the Defendants were proper owners of the Note at the time of foreclosure and the Defendants have refused, neglected or otherwise failed to do so.

30. Plaintiffs challenge the Defendants' standing in conducting the foreclosure and puts Defendants to strictly prove that they held the original Note and Mortgage on the subject property as at the commencement of foreclosure.

31. On March 20, 2011, Plaintiffs notified Defendants of their objections to the purported foreclosure sale and demanded its rescission because Plaintiffs were still

eligible to apply for alternative programs such as the Fannie Mae Deed-for-Lease program. A copy thereof is attached hereto as "Exhibit.5" and is incorporated by reference.

32. To date, Plaintiffs have received neither a response nor an acknowledgment of the letter. To the Plaintiffs, this inaction or incompetence on the part of the Defendants characterizes their experience throughout this loan modification nightmare.

33. Despite repeated requests, Defendants have refused, neglected or otherwise failed to furnish the Plaintiffs with appropriate title information showing that the Defendants had the legal right to conduct the foreclosure. Specifically, Plaintiffs demand an original, authentic copy of the following:

    i. all recorded assignments of mortgage;

    ii. the original Note given by the Plaintiffs to Countrywide Home Loans, Inc.

    iii. corporate resolution of the assignment by the Board of Directors of MERS;

    iv. a duly executed power of attorney authorizing Steven H. Bruns to act on behalf of MERS;

34. Plaintiffs allege that the purported foreclosure violated federal and state laws, including but not limited to Fair Debt Collection Practices Act (FDCPA) and Minnesota Statutes Section 580.021 regarding pre-foreclosure notices. Specifically, the Defendants did not give the Plaintiffs written notice that Plaintiffs could redeem the property by paying the price of the property at the sheriff's sale.

35. Plaintiffs allege that the Assignment of Mortgage raises questions of credibility, including but not limited to: the instrument was supposedly made on July 28, 2010,

which is over five years since the mortgage was originated; it was recorded only

weeks later for a foreclosure scheduled for November 10, 2010. Further, the

Assignment was purportedly signed by Steven H. Bruns, Vice-President of MERS,

presumably the same Steven H. Bruns the attorney who prepared the Notice of

Mortgage Foreclosure Sale dated September 13, 2010 on behalf of Peterson, Fram

& Bergman, P.A., the law firm representing Defendant BAC Home Loans Servicing, LP.

36. Plaintiffs suspect that under the foregoing circumstances, the supposed assignment

by Defendants was made for the sole purpose of effecting the improper foreclosure

and no other legitimate purpose.

37. Upon information and belief, Plaintiffs allege that the original mortgage and note

given to Countrywide was securitized and sold to investors, thereby denying

Defendants the legal right to foreclose on the property based on the mortgage and

note. Plaintiffs further demand that Defendants produce the original mortgage and

note.

38. Defendants proceeded with a foreclosure sale even as Plaintiffs were being

evaluated for loan modification under federal programs, in contravention of the

Emergency Economic Stabilization Act of 2008 (12 USC 5219) which prohibits

foreclosure sales from proceeding when homeowners are under consideration for a

federal loan modification program and encourages cooperation and access to

reasonable requests for loss mitigation measures, including term extensions, rate

reductions, principal write downs.

VI.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF: MISREPRESENTATION

39. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully written herein.

40. Defendants represented to the Plaintiffs that Defendants were in the process of considering, and the Plaintiffs were still eligible for, various options for loan modification with the goal of avoiding a foreclosure.

41. Defendants represented to the Plaintiffs that while the process of modification was going on, no action would be taken to foreclose on the property.

42. Defendants' representations were false as Defendants knew or should have known that the Plaintiffs were no longer under consideration for loan modification after February 16, 2011 and that Defendants' attorneys were busy foreclosing as Plaintiffs waited for a decision on the modification request.

43. Defendants' representations to Plaintiffs were intentional, reckless or negligent.

44. Defendants' misrepresentations to Plaintiffs were material.

45. Defendants knew or should have known that Plaintiffs would rely on those misrepresentations.

46. Plaintiffs relied on Defendants' misrepresentations and did not pursue other foreclosure prevention programs that were available to them and as promised by Defendants.

47. Plaintiffs' reliance on the Defendants' misrepresentations was to the Plaintiffs' detriment and they have suffered monetary and other damages as a result. Plaintiffs are on the verge of losing their property.

## SECOND CLAIM FOR RELIEF: PROMISSORY ESTOPPEL

48. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully written herein.

49. At the time the Plaintiffs were repeatedly requesting a loan modification program, Defendants represented that there were alternative programs under which the Plaintiffs would have avoided losing their property to foreclosure. According to the Defendants, all the Plaintiffs needed was to make an application and provide the necessary financial and other information. And the Plaintiffs did.

50. Plaintiffs reasonably relied upon the foregoing representations.

51. Plaintiffs' reliance was to their detriment.

52. Plaintiffs provided Defendants with all the requested information even after being declined for modification under the HAMP program, and forwent other foreclosure prevention strategies including but not limited to, working with HUD-certified housing counselors, filing bankruptcy or obtaining alternative financing from another lender.

53. Under the facts and circumstances of this case, justice requires the Defendants' representations be enforced and given effect.

54. Plaintiffs are entitled to enforcement of Defendants' representations regarding loan modification and Defendants are liable to Plaintiffs for actual damages.

## THIRD CLAM FOR RELIEF: BREACH OF FIDUCIARY DUTY

55. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully written herein.

56. Like many other homeowners affected by the housing bubble, Plaintiffs sought the Defendants' assistance in loan modification to avoid the loss of their property.

57. Defendants knew or should have known that they had special expertise and knowledge and a more sophisticated understanding of loan servicing and loss mitigation options than the Plaintiffs, especially in administering the HAMP program, FHA's loan modification programs and Fannie Mae Deed-for-Lease program.

58. Defendants knew or should have known that as their lender, Plaintiffs would rely upon the Defendants' superior resources and understanding of mortgage products to save their property under the various federal loan modification programs.

59. Plaintiffs relied on Defendants' representations that the Plaintiffs were being considered for modification and that Plaintiffs would be notified of denial in good time to explore other foreclosure prevention alternatives.

60. Defendants only notified Plaintiffs that Plaintiffs had been denied qualification into any modification program well after the property had been sold in foreclosure.

61. Defendants' action (or inaction) constitutes a breach of the fiduciary duty owed to the Plaintiffs.

62. As a direct and proximate result of Defendants' breach of the fiduciary duty, Plaintiffs have suffered and are entitled to recover, damages for the breach.

## FOURTH CLAM FOR RELIEF: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

63. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully written herein.

64. Defendants bore a duty of good faith and fair dealing implied in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of the contract.

65. Even as they were proceeding with the foreclosure of the Plaintiffs' property, the Defendants continued to actively mislead the Plaintiffs that they were being considered for a loan modification. The unknowing and unsuspecting Plaintiffs waited for Defendants' decision, thereby losing valuable time and foregoing other loss modification and workout alternatives. These misrepresentations constitute a breach of the duty of good faith and fair dealing.

66. Defendants are required by various contracts with the United States Government, the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Company ("Freddie Mac") or by the Federal Housing Administration regulations to offer loan modifications or workouts to struggling homeowners. By failing to give the Plaintiffs a reasonable opportunity to access these options, Defendants breached their duty.

67. Defendants provided false or misleading information to the Plaintiffs, promised to respond to requests but failed to do so, employed the services of rude and unhelpful staff, mishandled Plaintiffs' phone calls such that Plaintiffs were unable to receive loan modifications and workout options; and deliberately gave the Plaintiffs the impression that they (the Plaintiffs) were still under consideration for modification well after the foreclosure sale which Defendants had authorized. This conduct by the Defendants breached the duty of good faith and fair dealing.

68. Defendants' breach of their duty of good faith and fair dealing was intentional, wanton, reckless and/or negligent.

69. As a proximate result of Defendants' breach of this duty, Plaintiffs have suffered damages.

### FIFTH CLAIM FOR RELIEF: NEGLIGENCE

70. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully written herein.

71. Defendants have a duty to evaluate borrowers' requests for loan modification with a reasonable level of care and to qualify and notify borrowers of the outcome of such evaluation in a timely manner.

72. Defendants breached this duty by telling the Plaintiffs that the process of loan modification was underway even when Defendants had instructed their attorneys to foreclose on the Plaintiffs' property.

73. Defendants further breached this duty by failing to inform the Plaintiffs within reasonable time frames, that Defendants had denied Plaintiffs' applications for modification and that the property would be foreclosed. Plaintiffs would then have considered, other available alternatives.

74. Defendants' breach of this duty has caused Plaintiffs to suffer serious and ongoing damages, including financial harm to credit, extensive anxiety and emotional distress.

### SIXTH CLAIM FOR RELIEF: INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully written herein.

76. Defendants improperly serviced Plaintiffs' mortgage account in a manner that caused extreme anxiety and emotional distress by inter alia and as more fully set out above: repeatedly refusing to return Plaintiffs' phone calls, surreptitiously filing foreclosure, denying Plaintiffs an opportunity to access alternative programs after being declined under HAMP, requiring Plaintiffs to repeatedly resubmit paperwork

14

and financial information, sending agents to the property to attempt to sell it without notifying the Plaintiffs; inviting Plaintiffs to apply for other loan modification programs after the property had already been foreclosed on; and ruining the Plaintiffs' credit rating by reporting the mortgage loan as delinquent even as the Plaintiffs were trying to modify its terms.

77. Defendants acted intentionally, recklessly, knowingly and/or negligently in causing the Plaintiffs' emotional distress, or Defendants knew or should have known that their actions would result in Plaintiffs suffering serious emotional distress.

78. Defendants' conduct was extreme and outrageous and totally unbecoming of an entity of their size, reputation and expertise.

79. As a direct and proximate result of Defendants' intentional, reckless and/or negligent infliction of emotional distress, Plaintiffs have suffered untold humiliation, distress, anxiety and embarrassment. The loss of their property, financial well-being, harm to their credit rating and injury to their reputation are sources of serious emotional distress to the Plaintiffs.

80. As a result, Defendants are liable to Plaintiffs for actual damages.

VII.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court render judgment on the Plaintiffs' behalf as follows:

(1) an order invalidating the purported foreclosure sale of the Plaintiffs' property and directing Defendant Richard Stanek to rescind the sale;

(2) awarding unliquidated damages in excess of $50,000 or an amount to be determined at trial on each of the Plaintiffs' claims for misrepresentation,

15

promissory estoppel, breach of fiduciary duty, breach of covenant of good

faith and fair dealing, negligence and infliction of emotional distress.

(3) entering an injunction ordering the Defendants to afford Plaintiffs an

opportunity to modify their mortgage loan consistent with applicable law and

regulations;

(4) an order directing the Defendants to produce in court and furnish Plaintiffs

with, any and all documents proving that the Defendants legally owned the

mortgage and note of the Plaintiff s property located at 8501 32nd Avenue

North in Crystal in Hennepin County in the State of Minnesota;

(5) an order enjoining the Defendants from redeeming the property on August 16,

2011 or at any time pending determination of the matters raised in this suit.

(6) awarding the Defendant its costs, disbursements and attorney's fees incurred

herein; and

(7) awarding such other and further relief as this Court deems just and equitable.


Dated: _June 6, 2011_         THE TRANSATLANTIC LAW FIRM, PLLC

Henry Mokua Ongeri (#0390759)
Pro Se Plaintiff
Attorney for Plaintiff Dorothy K. Ming'ate
7515 Wayzata Boulevard, Suite 131
St. Louis Park, MN 55426
Tel: 952-544-1039
Fax: 952-516-1333

## VERIFICATION

State of Minnesota   )
                     )ss
County of Hennepin   )

**Dorothy K. Ming'ate**, being first duly sworn on oath, deposes and states that she is a Plaintiff

in the above-entitled proceeding; that she has read the Summons and Complaint and knows

the contents thereof; that the same is true to her knowledge, except as to those matters

therein stated on information and belief, and as to those matters she believes to be true.

_Dorothy K. Ming'ate_

Dorothy K. Ming'ate


Subscribed and sworn to before me
this __11__ day of __June_____ 2011 by
_Dorothy K. Mingate_


_Aster Tadesse_

Notary Public

Aster Tadesse
Notary Public
Minnesota
My Commission Expires January 31, 2016


My Commission expires on _Jan 31, 2016_

17

## ASSIGNMENT OF MORTGAGE

Date: July 28, 2010

FOR VALUABLE CONSIDERATION, Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender, a corporation under the laws of Delaware, Assignor, hereby sells, assigns and transfers to BAC Home Loans Servicing, LP 400 Countrywide Way Simi Valley,CA 93065, Assignee, the Assignor's interest in the Mortgage dated 10/26/2006 executed by Henry M. Ongeri and Dorothy K. Mingate, husband and wife., as Mortgagor, to Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender, as Mortgagee, DATE AND PLACE OF RECORDING: Recorded November 08, 2006, Hennepin County Recorder, Document No. 8890151. Hennepin County, Minnesota, together with all right and interest in the note and obligation therein specified and the debt thereby secured.

ASSIGNOR: Mortgage Electronic
Registration Systems, Inc. as nominee
for America's Wholesale Lender

By:_____
Steven H. Bruns
Its Vice President

STATE OF MINNESOTA      )
                        )ss.
COUNTY OF RAMSEY        )

This instrument was acknowledged before me on July 28, 2010, by Steven H. Bruns, the Vice President , of Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender, a corporation under the laws of Delaware, on behalf of the corporation.

_____
Notary Public

THIS INSTRUMENT WAS DRAFTED BY:
PETERSON, FRAM & BERGMAN, P.A.
55 East Fifth Street, Suite 800
St Paul MN 55101-1197
PF&B file: 16751-103765

JEAN E. JOHNS
Notary Public-Minnesota
My Commission Expires Jan 31, 2013

*Exh.1*

Exh. 1

Doc No **A9552331**

Certified filed and/or recorded on
8/27/10 11:00 AM
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
Jill L. Alverson, County Auditor and Treasurer

Deputy 4                                    Pkg ID 650370

**Doc Name: Assignment of Mortgage**

| Document Recording Fee | $46.00 |
|---|---|
| *Document Total* | $46.00 |

This cover sheet is now a permanent part of the recorded document.

## PETERSON, FRAM & BERGMAN, P.A.   (651) 291-8955
### 55 East Fifth Street, Suite 800     (651)228-1753 facsimile
### St. Paul, MN 55101-1718

October 29, 2010

Dorothy K. Mingate and Henry M. Ongeri
10630 Brunswick Ct. N.
Brooklyn Park MN 55443

RE:   Mortgage Foreclosure on:
      8501 32nd Ave N. Crystal, MN 55427
      Loan No.:    151663162
      Our File No.: 16751-103765

Dear Dorothy K. Mingate and Henry M. Ongeri

    This letter is to advise you that the Mortgage Foreclosure Sale has been postponed to Wednesday, February 16, 2011, at 9:00 a.m., Sheriff's Office, Room 30, Hennepin County Courthouse, 350 So. 5th St., City of Minneapolis.

    The date on or before which the mortgagor must vacate the property if the mortgage is not reinstated under Minnesota Statutes section 580.30 or the property redeemed under Minnesota Statutes section 580.23 is 08-16-2011 at 11:59 p.m. If the foregoing date is a Saturday, Sunday or legal holiday, then the date to vacate is the next business day at 11:59 p.m.

Sincerely,

Steven H. Bruns

SHB:mfs

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



Doc No **A9626640**

Certified filed and/or recorded on
2/18/11 10:00 AM
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
Jill L. Alverson, County Auditor and Treasurer

| Deputy 4 | Pkg ID 692864 |
|---|---|

**Doc Name: Sheriff's Certificate**

| Document Recording Fee | $46.00 |
|---|---|
| ***Document Total*** | $46.00 |

*Exh. 2*

STATE OF MINNESOTA, COUNTY OF HENNEPIN
Certified to be a true and correct copy of the
original on file and of record in my office

MAY 26 2011

MICHAEL H. CUNNIFF, COUNTY RECORDER

By _N. Dandial_ _____ Deputy



This cover sheet is now a permanent part of the recorded document.

*Exh. 2*

## NOTICE OF MORTGAGE FORECLOSURE SALE

---

**THE RIGHT TO VERIFICATION OF THE DEBT AND IDENTITY OF THE ORIGINAL CREDITOR WITHIN THE TIME PROVIDED BY LAW IS NOT AFFECTED BY THIS ACTION.**

---

NOTICE IS HEREBY GIVEN,   that default has occurred in the conditions of the following described mortgage:

DATE OF MORTGAGE: 10/26/2006

MORTGAGOR(S):  Henry M. Ongeri and Dorothy K. Mingate, husband and wife.

MORTGAGEE:   Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender

SERVICER:  Bank of America, N.A.

MORTGAGE ID #:  1000157-0007375266-5

DATE AND PLACE OF RECORDING:  Recorded November 08, 2006, Hennepin County Recorder, Document No. 8890151.

ASSIGNMENTS OF MORTGAGE: Assigned to: BAC Home Loans Servicing, LP Dated:July 28, 2010,

LEGAL DESCRIPTION OF PROPERTY:  Lot 14, Block 2, West Winnetka Terrace Fifth Addition, Hennepin County, Minnesota

TAX PARCEL NO.:  19-118-21-42-0027

ADDRESS OF PROPERTY:
8501 32nd Ave N.
Crystal, MN 55427

COUNTY IN WHICH PROPERTY IS LOCATED:  Hennepin

ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE: $171,500.00

AMOUNT DUE AND CLAIMED TO BE DUE AS OF DATE OF NOTICE, INCLUDING TAXES, IF ANY, PAID BY MORTGAGEE: $174,658.49

That prior to the commencement of this mortgage foreclosure proceeding Mortgagee/Assignee of Mortgagee complied with all notice requirements as required by statute; that no action or proceeding has been instituted at law or otherwise to recover the debt secured by said mortgage, or any part thereof;

PURSUANT to the power of sale contained in said mortgage, the above described property will be sold by the Sheriff of said county as follows:

DATE AND TIME OF SALE: Wednesday, November 10, 2010, 9:00 a.m.

PLACE OF SALE: Sheriff's Office, Room 30, Hennepin County Courthouse, 350 So. 5th St., City of Minneapolis

to pay the debt then secured by said Mortgage, and taxes, if any, on said premises, and the costs and disbursements, including attorneys' fees allowed by law subject to redemption within 6 months from the date of said sale by the mortgagor(s), their personal representatives or assigns.

DATE TO VACATE PROPERTY: The date on or before which the mortgagor must vacate the property if the mortgage is not reinstated under Minnesota Statutes section 580.30 or the property redeemed under Minnesota Statutes section 580.23 is 05-10-2011 at 11:59 p.m.  If the foregoing date is a Saturday, Sunday or legal holiday, then the date to vacate is the next business day at 11:59 p.m.

MORTGAGOR(S) RELEASED FROM FINANCIAL OBLIGATION ON MORTGAGE: NONE

THE TIME ALLOWED BY LAW FOR REDEMPTION BY THE MORTGAGOR, THE MORTGAGOR'S PERSONAL REPRESENTATIVES OR ASSIGNS, MAY BE REDUCED TO FIVE WEEKS IF A JUDICIAL ORDER IS ENTERED UNDER MINNESOTA STATUTES SECTION 582.032, DETERMINING, AMONG OTHER THINGS, THAT THE MORTGAGED PREMISES ARE IMPROVED WITH A RESIDENTIAL DWELLING OF LESS THAN FIVE UNITS, ARE NOT PROPERTY USED IN AGRICULTURAL PRODUCTION, AND ARE ABANDONED.

Dated: September 13, 2010

BAC Home Loans Servicing, LP
Assignee of Mortgagee


Peterson, Fram & Bergman, P.A.
By: Steven H. Bruns
Attorneys for:
BAC Home Loans Servicing, LP
Assignee of Mortgagee

55 E. 5th St., Suite 800
St. Paul, MN 55101
(651) 291-8955

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.**

16751-103765

## HELP FOR HOMEOWNERS IN FORECLOSURE  16751-103765

The attorney preparing this foreclosure is:      Steven H. Bruns
Peterson, Fram & Bergman, P.A.
55 East Fifth Street, Ste. 800
St. Paul, MN 55101
Telephone: 651-291-8955

It is being prepared for: Bank of America, N.A., 1-800-669-6607
As of 7/15/2010 this lender says that you owe $11,881.24 to bring your mortgage up to date (or "reinstate" your mortgage). You must pay this amount, **plus interest and other fees and costs which have accrued since that date,** to keep your house from going through a sheriff sale. Minnesota Statutes Sec. 580.30 allows you to reinstate the loan any time prior to the sheriff's foreclosure sale. Contact your lender at the above number or this office for the amount you must pay to keep your house from going through a sheriff's sale. The sheriff's sale is scheduled for Wednesday, November 10, 2010, 9:00 a.m. at Sheriff's Office, Room 30, Hennepin County Courthouse, 350 So. 5th St., City of Minneapolis.

Mortgage foreclosure is a complex process. People may contact you with advice and offers to help "save" your home.

**Remember:** It is important that you learn as much as you can about foreclosure and your situation. Find out about all your options before you make any agreements with anyone about the foreclosure of your home.

### Getting Help
As soon as possible, you should contact your lender at the above number to talk about things you might be able to do to prevent foreclosure. You should also consider contacting the foreclosure prevention counselor in your area. A foreclosure prevention counselor can answer your questions, offer free advice, and help you create a plan which makes sense for your situation.

Contact the Minnesota Home Ownership Center at 651-659-9336 or 866-462-6466 or www.hocmn.org or contact the United States Department of Housing and Urban Development at 1-800-569-4287 or www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?webListAction=search=MN#searchArea to get the phone number and location of the nearest certified counseling organization. Call today. The longer you wait, the fewer options you may have for a desirable result.

You are renting in a property that is in foreclosure. Minnesota law requires that we send you this notice about the foreclosure process. Please read it carefully.

The mortgage foreclosure does not change the terms of your lease. You and your landlord must continue to follow the terms of your lease, including the rights and responsibilities of you and your landlord. You must keep paying rent unless you have a legal reason to withhold it. Your landlord must keep the property repaired. Utilities must be paid under the terms of your lease or under state law.

Moving out of the property early might be a violation of your lease. The date of the sheriff's foreclosure sale is in the attached foreclosure notice. In most cases you do not need to move from the property before the sheriff's foreclosure sale. Read your lease to see if it says anything about foreclosure and about the rights you may have if the property is in foreclosure. If you have a month-to-month lease, the foreclosure notice does not change the rules for ending your lease. You and your landlord must still give legal notice to end your lease.

In most cases, your landlord has six months after the date of the foreclosure sale to pay off the mortgage. This is called the "redemption period". Read the attached foreclosure notice to determine the redemption period length. You cannot be asked to move during the redemption period except for lease violations or if your lease expires during the redemption period. If your landlord stops the foreclosure, you may not have to move. If your landlord does not stop the foreclosure there will be a new owner of the property at the end of the redemption period.

The new owner may have the legal right to ask you to move even if your lease is not over. The new owner must still give you a written notice stating that the new owners wants you to move.

Do not wait to get information about foreclosure. Mortgage foreclosure is a complicated process. It is important you learn about your rights as a renter when there is a mortgage foreclosure. You may have fewer options if you wait too long. There are government agencies and nonprofit organizations that you may contact for helpful information about the foreclosure process. For the name and telephone number of an organization near you, please call the legal aid office or bar association office in your county. You can also find information on tenant rights at HOME Line at 866-866-3546 and Law Help Minnesota at http://www.LawHelpMN.org. The State of Minnesota does not guarantee the advice of these agencies and organizations.

## HOMESTEAD DESIGNATION NOTICE

IF PART OF THE PROPERTY TO BE SOLD CONTAINS YOUR HOUSE, YOU MAY DESIGNATE AN AREA AS A HOMESTEAD TO BE SOLD AND REDEEMED SEPARATELY.

YOU MAY DESIGNATE THE HOUSE YOU OCCUPY AND ANY AMOUNT OF THE PROPERTY AS A HOMESTEAD. THE DESIGNATED HOMESTEAD PROPERTY MUST CONFORM TO THE LOCAL ZONING ORDINANCES AND BE COMPACT SO THAT IT DOES NOT UNREASONABLY REDUCE THE VALUE OF THE REMAINING PROPERTY.

YOU MUST PROVIDE THE PERSON FORECLOSING ON THE PROPERTY, THE SHERIFF, AND THE COUNTY RECORDER WITH A COPY OF THE LEGAL DESCRIPTION OF THE HOMESTEAD YOU HAVE DESIGNATED BY TEN BUSINESS DAYS BEFORE THE DATE THE PROPERTY IS TO BE SOLD.

# NOTICE OF REDEMPTION RIGHTS

### What Happens After the Foreclosure Sale

After the sheriff's sale, you have the right to "redeem." Redeem means that you pay the amount bid for your house at the sheriff's sale, plus interest and costs, to keep your house. You can keep living in your home for a period of time after the foreclosure sale. This is called a "redemption period." The redemption period is 6 months after the sheriff's sale. At the end of the redemption period, if you do not redeem or sell, you will have to leave your home. If you do not leave, the person or company that bid on your home at the sheriff's sale has the right to file an eviction against you in court.

### Be Careful of Foreclosure Scams

Be careful! After the foreclosure sale, people may approach you to buy your house or ask you to transfer your house to them for little or no money. Before you give up the rights to your house or sign any documents (including a deed), be sure you know how much the house sold for at the sheriff's sale and decide if you can save the house by paying the amount of the bid, plus interest and costs.

### How to Find Out How Much Your House Sold For at the Foreclosure Sale

The amount you need to pay to redeem your house may be less than the amount you owed on the mortgage before the sale. You can learn what this amount is (and who the winning bidder at the sale was) by attending the sheriff's sale or by contacting the sheriff's office after the sale.

### You Can Also Sell Your House

During the redemption period, if you sell your home, you must sell it for enough to pay off the winning bidder from the sheriff's sale and pay interest, fees, and other claims against the property. If there is any money left from the sale of the house after all these debts are paid, you can keep the money. You can also enter into a "short sale." A short sale is an agreement in which the lender agrees to accept less than the full amount you owe on the mortgage.

### Get More Information and Advice

For more information and advice, contact an attorney or mortgage foreclosure prevention counselor. You can find a mortgage foreclosure prevention counselor by contacting the Minnesota Home Ownership Center at 651-659-9336 or 866-462-6466 or www.hocmn.org or contact the U.S. Department of Housing and Urban Development at 1-800-569-4287 or www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?webListAction=search=MN#searchArea to get the phone number and location of the nearest certified counseling organization

## AFFIDAVIT OF COSTS AND DISBURSEMENTS

State of Minnesota      )
                           ( ss:
County of Ramsey      )

I, Steven H. Bruns, your affiant, being first duly sworn, on oath say:

That I am one of the attorneys foreclosing the mortgage described in the printed notice of mortgage foreclosure sale hereto attached;

That Attachment A is a detailed bill of the costs and disbursements of said foreclosure, and

That the same have been absolutely and unconditionally paid or incurred therein, to-with:

Total Costs and Disbursements . . .   $1,772.00

Further I saith not.

Steven H. Bruns

Subscribed and sworn to before
me this 16th day of February, 2011.

Notary Public

CAROLYN MARIE HURKES
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

16751-103765                                  151663162

ATTACHMENT A    February 9, 2011

## Firm Costs

| Description | Amount |
| --- | --- |
| Abstacting Fee - Title Work | $200.00 |
| Attorney's Fees | $700.00 |
| Service of Notice | $35.00 |
| Legal Publication | $665.00 |
| Rec. Power of Attorney | $46.00 |
| Sheriff's Sale Fee | $70.00 |
| Rec. Sheriff's Certificate | $46.00 |
| Photocopies and Postage | $10.00 |

| Total Firm Costs | $1,772.00 |
| --- | --- |

16751-103765

196

## V.    SHERIFF'S CERTIFICATE OF SALE

State of Minnesota          )
                                    ( ss:
County of Hennepin                    )

I, Richard W. Stanek, Sheriff of the County of Hennepin, State of Minnesota, do hereby certify; that pursuant to the printed Notice of Mortgage Foreclosure Sale hereto attached and the power of sale contained in the following described mortgage:

DATE OF MORTGAGE:  10/26/2006

MORTGAGOR(S): Henry M. Ongeri and Dorothy K. Mingate, husband and wife.

MORTGAGEE: Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender

SERVICER:  Bank of America, N.A.

MORTGAGE ID #:  1000157-0007375266-5

DATE AND PLACE OF RECORDING:  Recorded November 08, 2006, Hennepin County Recorder, Document No. 8890151.

ASSIGNMENTS OF MORTGAGE: Assigned to: BAC Home Loans Servicing, LP Dated:July 28, 2010, Recorded August 27, 2010, Hennepin County Recorder, Document No. A9552331.

I did, at the time and place in said notice specified:

DATE AND TIME OF SALE: Wednesday, February 16, 2011, 9:00 a.m.

PLACE OF SALE: Sheriff's Office, Room 30, Hennepin County Courthouse, 350 So. 5th St.,  City of Minneapolis

offer for sale and sell at public auction to the highest and best bidder, the tract of land described as follows, to wit:

LEGAL DESCRIPTION OF PROPERTY: Lot 14, Block 2, West Winnetka Terrace Fifth Addition, Hennepin County, Minnesota

TAX PARCEL NO.: 19-118-21-42-0027

ADDRESS OF PROPERTY:
8501 32nd Ave N.

Crystal, MN 55427

COUNTY IN WHICH PROPERTY IS LOCATED: Hennepin

and did strike off and sell the same to:  BAC Home Loans Servicing, LP, for the sum of: $183,252.29.

said purchaser being the highest bidder and said sum being the highest and best bid offered therefore; and that said sale was in all respects openly, honestly, fairly, and lawfully conducted, and the time allowed for redemption by the mortgagor (s), their personal representatives or assigns is 6 months from the date of the sale.

INTEREST RATE: 6.5

IN TESTIMONY WHEREOF, I HAVE HEREUNTO SET MY HAND ON THIS 16th day of February, 2011.

Richard W. Stanek
as Sheriff of Hennepin County, Minnesota

By _____ Deputy

State of Minnesota

County of Hennepin

On this 16th day of February, 2011, before me personally appeared **Sgt. Dave Berens #368**, know to be the _deputy_ Sheriff of said County, and the person described in and who executed the foregoing instrument, and acknowledged that _he executed the same as h is_ free act and deed as such _deputy_ Sheriff.

TODD BRIAN CONNORS
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

Notary Public

16751-103765                                    151663162

## SWORN AFFIDAVIT REGARDING

## MORTGAGORS' MILITARY STATUS

State of Minnesota )
                      ( ss:
County of Ramsey )

       I, the undersigned affiant, being first duly sworn, on oath state:

       That I know the facts relating to the military service status of Henry M. Ongeri and Dorothy K. Mingate, husband and wife. who have an ownership interest in the mortgaged premises described in the Notice of Mortgage of Foreclosure Sale;

       That Henry M. Ongeri and Dorothy K. Mingate, husband and wife. were/was not in the military or naval services of the United States of America at the time of said sale, or during the three (3) months preceding such sale, and

       FURTHER, I SAITH NOT.

                                 Steven H. Bruns

Subscribed and sworn to before
me this 16th day of February, 2011.

       Notary Public

CAROLYN MARIE HURKES
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

PFB File No. 16751-103765

                                    151663162



BAC Home Loans Servicing, LP
5401 N Beach St
TX2-977-01-34
Fort Worth, TX 75137

February 21, 2011

Dorothy K Mingate
8501 32ND AVENUE NORTH
CRYSTAL, MN 55427

**Loan Number: 151663162**

Dear Dorothy K Mingate:

We have reviewed your request for a loan modification under the federal government's Home Affordable Modification Program. We have also considered you for our other loan modification programs. Unfortunately, you are not eligible for the Home Affordable Modification Program for the reason(s) stated below.

We know this is a difficult time for you and we want to help you avoid the negative consequences of a foreclosure. Please see below for your next steps to help you avoid foreclosure

- A Short Sale. With this program, you agree to sell your home at fair market value and settle your mortgage debt for less than the amount you owe.
- A Deed in Lieu of Foreclosure. With this program, you can avoid the public auction of your home by voluntarily transferring the title or ownership of your property to satisfy your mortgage debt.
- The Fannie Mae Deed-for-Lease™ program. With this program, you agree to a deed in lieu of foreclosure and transfer the title of your property to Fannie Mae instead of paying your mortgage debt, even if the value of the property is less than the outstanding balance on your mortgage. You then lease the property back from Fannie Mae at a current rental rate.

These programs have different requirements and guidelines. Benefits of the programs could include possible relocation assistance payments for qualified borrowers. Please contact us at 1.888.325.5399 to learn more about these programs.

**Reason your loan was not eligible**

Under the guidelines of the Home Affordable Modification Program:

You are not eligible for a Home Affordable Modification because you do not live in the property as your primary residence.

According to the guidelines of the Home Affordable Program, you have 30 days to appeal the decision that your loan is not eligible for the program. Please contact us by March 23, 2011 at 1.888.325.5399, if you think that the information used to determine your eligibility is incorrect.

**Important information about foreclosure**

If a foreclosure sale of your home is currently pending and on hold, that hold will continue and remain in effect while you are considered for other foreclosure avoidance programs, such as a short sale or deed in lieu of foreclosure. However, if we do not hear from you by March 03, 2011, the hold on a foreclosure sale will be released and foreclosure proceedings will resume. We urge you to call us at 1.888.325.5399 prior to March 03, 2011 to discuss these programs.

**Important—Do not ignore any foreclosure notices.**

You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home. While you will not lose your home before March 03, 2011, to protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process, contact us at 1.888.325.5399. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

*Exh.3*



LMO_278-3

**We're here to help you**

We want to make sure you are aware of and understand all options available to you. We want to work with you to help you determine what options may be right for your individual situation. We strongly encourage you to continue making the normal monthly payments required under your original loan documents to help avoid foreclosure.

You can also seek assistance at no charge from U.S. Department of Housing and Urban Development-approved housing counselors by calling the HOPE Hotline Number (1.888.995.HOPE). Assistance in understanding this notice is available through the HOPE Hotline by asking for MHA HELP.

**Please call us today at 1.888.325.5399 Monday-Thursday from 8 a.m. - midnight Eastern, Friday from 8 a.m. - 10 p.m. Eastern, Saturday from 9 a.m. - 6 p.m. Eastern and Sunday 3 p.m. – 11 p.m. to discuss options that may help you avoid a foreclosure sale of your property.**

Home Loan Team
BAC Home Loans Servicing, LP



Mortgages funded and administered by an Equal Housing Lender.
Protect your personal information before recycling this document

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector. However, the purpose of this communication is to let you know about your potential eligibility for programs to help you avoid foreclosure.

ORIGIN ID: SGRA     18774221761
HOME RETENTION GROUP
BACGENDDL
9700 BISSONNET STREET
SUITE 1500
HOUSTON, TX 77038
UNITED STATES US

SHIP DATE: 21FEB11
ACTWGT: 0.1 LB
CAD: 5757449/WSXI2250

BILL THIRD PARTY

TO **DOROTHY MINGATE**

**8501 32ND AVENUE NORTH**

**CRYSTAL MN 55427**
17635450503          REF: ORDERID: 4035342
INV:
PO:                                      DEPT:



**Home Loans**

**Bank of America**



FedEx.
Express

E

TRK#
0201  **7944 4637 3205**

TUE - 22 FEB   A1
STANDARD OVERNIGHT

**NP AELA**

**55427**
MN-US **MSP**



Grph. 3

IF UNDELIVERABLE: STAT 34 - DO NOT RTS
BACGENDDL_02142011D



**We need important information before we can determine if you are eligible for a loan modification.**

**We must receive it by January 29, 2011.**

January 14, 2011

DOROTHY K MINGATE
10630 Brunswick Ct N
Brooklyn Park, MN 55443

**Loan Number: 151663162**

Dear DOROTHY K MINGATE:

Thank you for your interest in the federal government's Home Affordable Modification Program. The process requires we receive certain financial information from you. This information will enable us to verify that your loan is eligible for the federal government's Home Affordable Modification Program

As of the date of this letter, we are **missing the required documents.** We can't complete the eligibility review until we receive the following information from each borrower by January 29, 2011:

- Copy of the two most recent pay stubs not more than 90 days old indicating year-to-date earnings (clean and readable)
- For rental income, a copy of your rental agreement if you did not include this income on your most recent tax return and copy of two bank statements showing receipt of rent or two canceled rent checks

**Please note: Keep a copy of all documents for your records. Do not send original income documentation.**

Please complete and fax the remaining documentation to us at 1.888.258.7329 or send to us using the enclosed FedEx envelope. **We must receive this information no later than January 29, 2011.** Once we receive your remaining documentation, we will notify you of the next steps in the loan modification process.

We want you to know that if we do not receive the requested information by January 29, 2011, you will no longer be eligible for the Home Affordable Modification Program and we will resume normal activities for collecting past due loan payments.

**Important information about foreclosure proceedings**

If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for the Home Affordable Modification Program. However, no foreclosure sale will be conducted and you will not lose your home during the Home Affordable Modification Program evaluation. If we do not receive your documents by January 29, 2011 the hold on a foreclosure sale will be released and foreclosure proceedings will resume.

**Important - Do not ignore any foreclosure notices.**

Do not ignore any foreclosure notices. While you will not lose your home during the loan modification evaluation, to protect your rights under applicable foreclosure law, you may need to respond to foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your loan, contact us at **1.800.669.6650.**

If you have any questions about our request for documents or want to confirm that we have received your missing information, please call us at **1.888.204.1516** Monday - Friday from 9 a.m. - 9 p.m. Eastern and Saturday from 9 a.m. - 4 p.m. Eastern. We want to work with you and urge you to send us your documentation as soon as possible.

Home Loan Team
BAC Home Loans Servicing, LP

**Bank of America** 〰 **Home Loans**

**Enclosures:** (1) Pre-paid envelope  (2) Customized Cover Sheet  (3) Important Disclosures

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector. However, the purpose of this communication is to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through more affordable payments.

Mortgages funded and administered by an Equal Housing Lender.
Protect your personal information before recycling this document.



June 09, 2011

> Record of Foreclosure/Execution Sale

| | |
|---|---|
| **Sale Record Number:** | 1102196 |
| **Mortgage Document Number:** | 8890151 |
| **Date of Sale:** | 2/16/2011 |
| **Type of sale:** | Mortgage |
| **Mortgagor(s):** | Henry M Ongeri, Dorothy K Mingate |
| **Mortgagee:** | BAC Home Loans Servicing LP |
| **To Whom Sold:** | BAC Home Loans Servicing LP |
| **Final Bid Amount:** | $183,252.29 |
| **Redemption Expiration Date:** | 8/16/2011 |
| **Deputy Sold By:** | Sgt. Dave Berens |
| **Law Firm/Attorney:** | Peterson Fram & Bergman |
| **Unverified Common Address:** | 8501 32nd Ave N, Crystal |
| **Optional Comments:** | No value entered |
| **Property Information Search:** | |

*Exh. 4*

Dorothy K. Ming'ate
10630 Brunswick Ct N
Brooklyn Park, MN 55443

March 20, 2011

Bank of America Home Loans
Attn: Correspondence Unit
P.O. Box 5170
Simi Valley, CA 93062-5170

Dear Sir/Madam,

### Ref: Loan No. 151663162; Property Address: 8501 32nd Ave. N., Crystal, MN 55427

On February 24, 2011 I received a letter from Bank of America (BoA) notifying me that I was not eligible for the Home Affordable Modification Program. The letter also advised me to follow some steps to avoid foreclosure. Per the letter, I had 30 days from that date to appeal the decision and needed to contact BoA by March 23, 2011.

Because I really wanted to keep the above property, I immediately called one of your representatives in order to exercise my available options. To my surprise, I was told that the loan was no longer being handled by the BoA and I needed to call the REO department. When I requested an explanation, I was told that our house went into foreclosure on February 16, 2011. The attorney supposedly handling the foreclosure refused to postpone the sale and advised me that this is normally done by the underwriter of the account if there is a loan modification in process. I had no reason to doubt this seemingly reasonable procedure.

On various occasions, BoA employees or representatives gave me misleading or possibly, outright false information regarding my account and the progress of the modification process. For example, On February 25, 2011 I talked to more BoA representatives and was told to reach a Dorothy Clave who, from what I was told, was now handling my account above. This contradicted the earlier information that only the underwriter could postpone a foreclosure sale following my request. I am reliably informed that Ms. Clave is not the underwriter in charge of the account.

Moreover, I was also told that Ms. Clave was so busy that she could only get back to me within 72 business hours with an explanation/resolution of the confusion. She was supposedly the only one who knew why the loan was foreclosed when I still had alternatives. To date, I do not have such an explanation. Given the manner in which my case has been handled, I am convinced that BoA employees deliberately misled me into thinking that the modification process was underway while at the same time proceeding with

*Exh. 5*

foreclosure. I spoke to a supervisor on the same day and was told that my case was escalated to a 'higher' level and to wait for a phone call. I made numerous calls to several departments but got no clear answer. I also called to apply for the Fannie Mae Deed-for-Lease™ program but was told that there is little they could do after a house is foreclosed. This is despite the fact that I had always provided all necessary information for modification and only awaited a decision by BoA.

After more than ten days of waiting, I called on March 11, 2011 and talked to another rep who also told me that my case was going to be 'escalated'—yet again.

Because of the foregoing, I believe that the supposed foreclosure was premature and a direct result of confusion within BoA. Because I still wish to keep my property, I hereby demand the following:

1. immediate rescission of the purported foreclosure sale and an opportunity to exercise my options such as applying for the Fannie Mae Deed-for-Lease™ program.

2. fair, expeditious and transparent consideration of all alternatives to foreclosure for which I am eligible. The process to modify our loan was flawed and BoA representatives were in an apparent hurry to foreclose on the property. We did not exhaust or get a chance for fair consideration of other available alternatives because the house was foreclosed before I got any correspondence from the underwriter. I never got any notification that I had been removed from consideration for loan modification until February 24, 2011. By this time, the foreclosure had supposedly been completed.

Kindly take notice that unless you comply with my above demands within 14 days of this date, I will seek legal redress with its attendant consequences remaining on BoA.

I am hoping for a speedy and mutually satisfactory resolution of this matter.

Yours truly,

Dorothy K. Ming'ate

2