UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dorothy K Ming'ate and
Henry M. Ongeri,

        Plaintiffs,

v.

Bank of America, N.A., BAC Home
Loan Servicing, LP, and Richard W.
Stanek,

        Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 11-1787 ADM/TNL

---

Dorothy K. Ming'ate, pro se and Henry M. Ongeri, pro se.

Andre T. Hanson, Esq., Ronn B. Kreps, Esq., and Sparrowleaf Dilts McGregor, Esq., Fulbright & Jaworski L.L.P., Minneapolis, MN, on behalf of Defendants Bank of America, N.A. and BAC Home Loan Servicing, LP.

Charles H. Salter, Assistant Hennepin County Attorney, Minneapolis, MN, on behalf of Defendant Richard W. Stanek.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendants Bank of America, N.A., and BAC Home Loans Servicing, LP's (collectively, "Bank of America") Motion to Dismiss [Docket No. 9]. Dorothy K. Ming'ate and Henry M. Ongeri (collectively, "Plaintiffs") oppose the motion. Also before the Court is Defendant Richard W. Stanek's ("Stanek") Motion to Dismiss [Docket No. 18], which is unopposed by Plaintiffs. For the reasons set forth below, both Motions are granted.

## II.  BACKGROUND[1]

Plaintiffs Dorothy K. Ming'ate and Henry M. Ongeri have owned real property (the "Property") in Crystal, Minnesota, since October 2000.  Notice of Removal [Docket No. 1] Ex. A (Complaint) ¶ 6.  The home on the property was a rental property, not the Plaintiffs' primary residence.  Mem. in Supp. of TRO [Docket No. 3] 3.  Plaintiffs refinanced their property with home loans in the amount of $220,500 in 2006.  Compl. ¶¶ 7-8.  On July 26, 2010, Plaintiffs requested a loan modification.  Hanson Decl. [Docket No. 32] Ex. A (HAMP Loan Modification Request).  On July 28, 2010, the Plaintiffs' mortgage was assigned to Defendant BAC Home Loan Servicing, LP ("BAC").  Id. at ¶ 9; Compl. Ex. 1 (Assignment of Mortgage).  In 2010, Plaintiffs defaulted on their loan and, on September 13, 2010, the property went into foreclosure.  Compl. ¶ 7; Compl. Ex. 2 (Notice of Mortgage Foreclosure Sale).  The original date of the foreclosure sale was set for November 10, 2010, Compl. Ex. 2, but Plaintiffs received a letter dated October 29, 2010, which postponed the sale until February 16, 2011.  Compl. Ex. 1.

By letter of January 14, 2011, Bank of America requested more information to determine Plaintiffs' eligibility for a loan modification under the Home Affordable Modification Program ("HAMP").  Compl. Ex. 3.  Plaintiffs timely returned the required documents.  The foreclosure sale occurred on the scheduled date, and the Property was purchased by BAC.  Compl. Ex. 4.  After the foreclosure sale, Plaintiffs received a letter from Bank of America dated February 21, 2011, denying them a loan modification under HAMP because they "did not live in the property as [their] primary residence."  Compl. Ex. 3.

---

[1] In considering Defendants' Motion to Dismiss, the Court takes the facts alleged in Plaintiffs' Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Upon receipt of this letter, Plaintiffs sent letters and called Bank of America frequently, seeking more information in an attempt to regain the Property. See, e.g., Compl. Ex. 5. Plaintiffs did not, however, formally appeal Bank of America's loan eligibility decision within the required 30 days. Plaintiffs filed this suit in state court on June 6, 2011, prior to its removal to federal court. Plaintiffs' Motion for a Temporary Restraining Order, [Docket No. 2], was denied by order dated August 9, 2011 [Docket No. 29]. The redemption period for the Property expired on August 16, 2011. Compl. Ex. 4. Bank of America now moves to dismiss this action.

### III. DISCUSSION

**A.     Motion to Dismiss Standard**[2]

A motion to dismiss a complaint for failure to state a claim is governed by Rule 12 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true. See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A Rule 12(b)(6)

---

[2] While Dorothy K. Ming'ate and Henry M. Ongeri are pro se plaintiffs, Mr. Ongeri is a licensed attorney. Typically, pro se complaints are to be "liberally construed," Estelle v. Gamble, 429 U.S. 97, 106 (1976), and held to "less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Given this rationale for applying a less strict standard to pro se laypersons, courts have declined to extend "less stringent standards and liberal construction" to pro se attorneys. Powell v. Galveston Indep. Sch. Dist., No. G-06-415, 2006 U.S. Dist. LEXIS 57514, at *4 n.3 cited by Phillips v. Speedway SuperAmerica LLC, No. 09-2447, 2010 U.S. Dist. LEXIS 112800, at *15 n.9 (D. Minn. Oct. 22, 2010).

motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). This plausibility determination is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.      Plaintiffs Have Failed to State a Claim Under the Home Affordable Modification Program ("HAMP")**

Plaintiffs Dorothy K. Ming'ate and Henry M. Ongeri assert in their Complaint six common law claims: misrepresentation, promissory estoppel, breach of fiduciary duty, breach of covenant of good faith and fair dealing, negligence, and infliction of emotional distress. Although Plaintiffs argue that "HAMP is only peripheral to [their] claims," Mem. in Opp'n of Mot. [Docket No. 30] at 8, Bank of America contends that the claims all stem from their application for a HAMP loan modification, Bank of America's handling of that HAMP

application, and the denial of that application. Bank of America argues that HAMP fails to provide a private right of action, and that therefore Plaintiffs have failed to state claim under which relief can be granted.

In response to the 2008 financial crisis, Congress enacted the Emergency Economic Stabilization Act ("EESA"), 12 U.S.C. §§ 5201–5253, which included the Troubled Asset Relief Program ("TARP") established with the aim of "purchas[ing] . . . troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary." 12 U.S.C. § 5211(a)(1). In 2009, under the Secretary of Treasury's discretionary authority to "facilitate loan modifications to prevent avoidable foreclosures," id. § 5219(a)(1), the Secretary introduced the "Making Home Affordable Program" of which HAMP is a part.

Judicial review of the Secretary's actions is expressly limited in the EESA. The sole private right of action is the right to bring an action under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706; the EESA states that "Actions by the Secretary pursuant to the authority of this Act shall be subject" to the APA. 12 U.S.C. § 5229(a)(1). Significantly, the EESA does not create any private right of action for borrowers against lenders or servicers.

A majority of courts have held that EESA, and by extension TARP and HAMP, do not provide a private right of action for borrowers. See, e.g., Dugger v. Bank of America, N.A./Countrywide Home Loans, 2010 WL 3258383, at *2 (E.D. Mo. August 16, 2010) (holding that because neither EESA, TARP, nor HAMP create a private right of action, plaintiffs' "attempt to state a claim under . . . HAMP . . . shall be dismissed"). Moreover, courts in this district have consistently ruled that HAMP fails to provide a private right of action. See McInroy v. BAC Home Loan Servicing, LP, No. 10-4342, 2011 WL 1770947, a *3 (D. Minn.

5

May 9, 2011) ("Congress did not create an express or implied private right of action to enforce EESA or HAMP . . . and dismissal of this claim is warranted."); see also Brisbin v. Aurora Loan Servs., LLC, No. 10-2130, 2011 WL 1641979, at *5 (D. Minn. May 2, 2011) (finding no private right of action under HAMP where borrower alleged the loan servicer failed to stop foreclosure proceedings while she sought a loan modification). Even when plaintiffs "avoid[] direct references to HAMP in the verified complaint," dismissal is warranted if "the facts pleaded in support of plaintiffs' claims are entirely based on the loan modification request under HAMP." Cox v. Mortg. Elec. Registration Sys., Inc., No. 10-4626, 2011 WL 2600700, at *3 (D. Minn. June 30, 2011).

Some courts have held, however, that HAMP does not bar all state common law claims, finding that private causes of action are not prohibited by HAMP because no express federal preemption exists in HAMP. See, e.g., Darcy v. CitiFinancial, Inc., No. 1:10-cv-848, 2011 WL 3758805, at *4 (W.D. Mich. Aug. 25, 2011) (allowing state common law claims to proceed "without some explicit direction from Congress that it intended programs such as HAMP to have such preemptive force"). Courts have found statutes such as HAMP to solely bar private causes of action which impose new requirements on lenders. See, e.g., Valverde v. Wells Fargo Bank, N.A. No. C-11-2423 SC, 2011 WL 3740836, at *5 (N.D. Cal. Aug. 25, 2011) ("the only 'requirement' [the Home Owners' Loan Act] imposes on Wells Fargo is that it be held responsible for the statements it makes to its borrowers. If these causes of action were preempted, [lenders] would be free to lie to their customers with impunity.").

In this case, Bank of America argues that Plaintiffs' six state common law claims all stem from their attempted HAMP loan modification, although Plaintiffs failed to expressly state a

HAMP claim in their Complaint.  Plaintiffs concede that no private cause of action exists under HAMP, but they assert that they have alleged viable independent state common law claims.  See Mem. in Opp'n of Mot. at 6, 9.  Because Plaintiffs' common law claims all fail as a matter of law, the Court need not decide here whether HAMP preempts all private causes of action or bars all state common law claims.

C.     **Remaining State Law Claims Fail as a Matter of Law**

   **1. Misrepresentation**

Claims of misrepresentation must be pled with particularity.  See Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake.").  This heightened particularity standard requires pleadings to allege the "who, what, when, where, and how" of the fraud.  United States ex. rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted).  Both negligent and fraudulent representation claims must be pled with this same particularity.  See Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010)

Minnesota law requires a claim for fraudulent misrepresentation to allege the following: (1) a false representation by a party of a past or existing material fact susceptible of knowledge; (2) the representation was made with the knowledge of its falsity or made as of the party's own knowledge without knowing whether it was true or false; (3) it was made with the intention to induce another to act in reliance thereon; (4) the representation caused the other party to act in reliance thereon; and (5) the party suffered pecuniary damage as a result of the reliance.  See Best Buy Stores, L.P. v. Developers Diversified Realty Corp., 636 F. Supp. 2d 869, 887 (D. Minn. 2009).  Negligent misrepresentation claims differ only in the required state of mind, necessitating a showing that the defendant "supplie[d] false information" and "fail[ed] to

exercise reasonable care or competence in obtaining or communicating the information." Trooien, 608 F.3d at 1028 (citation omitted).

Plaintiffs claim that prior to the sheriff's sale, Bank of America made misrepresentations to them concerning their loan modification application. In support of their claim, Plaintiffs allege that "Defendants' representations were false as Defendants knew or should have known," that "Plaintiffs relied on Defendants' misrepresentations and did not pursue other foreclosure prevention programs," and that "Plaintiffs' reliance on the Defendants' misrepresentations was to the Plaintiffs' detriment." Compl. ¶¶ 42, 46-7. These vague assertions fail under the Rule 9(b) heightened pleading standard. The claims fail to specify who made the misrepresentations, as well as when and where they were made. Plaintiffs also do not demonstrate that Defendants acted with knowledge of the representations' falsity. Furthermore, the Complaint fails to describe with particularity how Plaintiffs relied on the representations and specifically how that reliance was detrimental. Therefore, this claim fails and is dismissed.

**2. Promissory Estoppel**

Promissory estoppel under Minnesota law requires proof that (1) a clear and definite promise was made, (2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent injustice. See Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000). The Minnesota Statute of Frauds, however, provides that implied-in-fact oral promises to modify loans fail as a matter of law. Minn. Stat. § 513.33 (an "agreement by a creditor to . . . enter[] into a new credit agreement, [or] forbear[] from exercising prior credit agreements" does "not give rise to a claim that a new credit agreement is created."); see also Hinden v. Am. Bank of North, No. A09-404,

8

2009 WL 4573909, at *2-3 (Minn. Ct. App. Dec. 8, 2009) (barring a promissory estoppel claim because the oral credit agreement failed to satisfy Minn. Stat. § 513.33).

The Plaintiffs argue that Bank of America promised that their HAMP application was being considered and that during this process "no adverse action would be taken by the Defendant or its agents." Mem. in Opp'n of Mot. at 11. Because this promise was oral, it fails by application of Minn. Stat. § 513.33 and thus warrants dismissal.

Secondly, Plaintiffs failed to show that enforcing the alleged promises is necessary to prevent injustice. Bank of America was entitled to hold the sheriff's sale on Plaintiffs' Property on February 16, 2011, as Plaintiffs were several months delinquent in their payments. Similar cases have found no injustice in refusing to enforce loan modification promises. See Brisbin, 2011 WL 1641979, at *4. Plaintiffs' promissory estoppel claim is dismissed.

### 3. Breach of Fiduciary Duty

In Minnesota, lenders bear no fiduciary duty to borrowers. See Klein v. First Edina Nat. Bank, 196 N.W.2d 619, 623 (Minn. 1972). Unless a special relationship exists between the bank and the borrower, where the bank has reason to know of the customer's trust and reliance, "when a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer." Id.

Plaintiffs allege that Bank of America breached their fiduciary duty during the loan modification process. Plaintiffs imply that a fiduciary duty was created by Defendants' "special expertise and knowledge and a more sophisticated understanding of loan servicing." Compl. ¶ 57. No special relationship exists between Bank of America and Plaintiffs, and therefore no fiduciary duty exists. Accordingly, this breach of fiduciary duty claim is dismissed.

### 4. Breach of the Covenant of Good Faith and Fair Dealing

Contracts in Minnesota include an "implied covenant of good faith and fair dealing" that prevents either party from "unjustifiably hinder[ing] the other party's performance of the contract." Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can., Ltd., 552 N.W.2d. 254, 268 (Minn. Ct. App. 1996) (citation omitted).  To demonstrate that a party has unjustifiably hindered the performance of a contract, a plaintiff must show that the other party acted in bad faith, refusing "to fulfill some duty or contractual obligation based on an ulterior motive." Sterling Capital Advisors, Inc. V. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).

The sole contracts at issue in this case are the mortgage and promissory note of Plaintiffs. Under these contracts, Plaintiffs do not have a right to modify the mortgage.  Plaintiffs have alleged no facts that Bank of America unjustifiably hindered the performance of either of these contracts.  Because Bank of America had no contractual obligation to modify the loan, they did not act in bad faith by foreclosing and proceeding with the sheriff's sale.  Therefore, Plaintiffs' claim of a breach of the covenant of good faith and fair dealing also is dismissed.

### 5. Negligence

The elements of negligence are a duty of care, a breach of that duty, causation, and injury.  See Foss v. Kincade, 766 N.W.2d 317, 320 (Minn. 2009).  A duty of care determination is a matter of law for the court.  State v. Back, 775 N.W.2d 866, 869 (Minn. 2009).

Plaintiffs fail to establish that Bank of America owed a duty of care to its borrowers generally, or to Plaintiffs specifically.  While Plaintiffs allege that Defendants' duty is to "evaluate borrowers' requests for loan modification with a reasonable level of care and to qualify and notify borrowers of the outcome . . . in a timely manner," they offer no support for this

10

assertion. As stated previously, HAMP creates no duty for lenders to make loan modifications or to do so in a timely fashion; as a result, Plaintiffs' negligence claim is dismissed.

### 6. Infliction of Emotional Distress

Infliction of emotional distress is divided into negligent and intentional torts. Negligent infliction of emotional distress requires showing the following: (1) defendant's negligence; (2) caused emotional distress; (3) which is physically manifested; and (4) that plaintiff was within the zone of physical danger of the negligent act. Meleen v. Hazelden Found., 740 F. Supp. 687, 693 (D. Minn. 1990). Plaintiffs allege no physical manifestations of their emotional distress nor their presence within the zone of danger, and therefore this claim warrants dismissal as a matter of law.

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) which was intentional or reckless; and (3) which caused severe emotional distress. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983). To rise to the level of "extreme or outrageous conduct," that conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Haagenson v. Nat'l Farmers Union Prop. and Cas. Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979). Severe emotional distress requires more than general concerns about mental distress or minimal medical treatment. Cf. Eklund v. Vincent Brass & Aluminum Co., 351 N.W.2d 371, 379 (Minn. App. 1984) (dismissing a claim of intentional infliction of emotional distress where plaintiff suffered humiliation, mental distress, embarrassment, and general depression).

Plaintiffs' claim of intentional infliction of emotional distress fails for want of proof either of severe emotional distress or of extreme and outrageous conduct. Simply stating that

Bank of America's behavior was "unbecoming of an entity of their size," Compl. ¶ 78, is insufficient to establish extreme or outrageous conduct. Similarly, Plaintiffs' "humiliation, distress, anxiety and embarrassment," Compl. ¶ 79, do not rise to the level of severe emotional distress. This claim is also dismissed.

**D.    Plaintiffs Have Failed to Allege Any Specific Facts Relating to Stanek**

Plaintiffs' Complaint names Richard Stanek, but Plaintiffs allege no specific facts which would support either a HAMP claim or one of the common law claims against Stanek. Indeed, while their Complaint makes allegations against "Defendants" generally, none of the claims for relief mention an action taken by Stanek. As to Stanek, then, Plaintiffs have failed to plead in accordance with Rule 8(a) and the facial plausibility standard of <u>Twombly</u>. 550 U.S. 544, 570. Accordingly, all claims against Stanek are dismissed.

### IV. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.    Bank of America's Motion to Dismiss [Docket No. 9] is **GRANTED**;

2.    Stanek's Motion to Dismiss [Docket No. 18] is **GRANTED;**

3.    All claims alleged in the Complaint are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 30, 2011.